IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| BRENDON J. BOWERSOX, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:20-cv-480 (RDA/JFA) |
| ) | |
| JOHN E. WHITLEY, ) | |
| Acting Secretary of the Army, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the parties' cross-motions for summary judgment in this Administrative Procedure Act ("APA") suit for review of final agency action. Dkt. Nos. 18; 21.[1] The Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Loc. Civ. R. 7(J). This matter has been fully briefed and is now ripe for disposition. The Court has considered the administrative record, the parties' motions for summary judgment, and the parties' briefing. For the reasons that follow, the Court denies Plaintiff's Motion for Summary Judgment and grants Defendant's Motion for Summary Judgment.

I. BACKGROUND

On September 17, 2008, Brendon J. Bowersox ("Plaintiff") enlisted in the United States Army. Administrative Record ("AR") 267-269 (Dkt. 17).[2] After completing basic combat and

---

[1] On January 20, 2021, John E. Whitley replaced Ryan D. McCarthy as the Acting Secretary of the Army. Accordingly, pursuant to Federal Rule of Civil Procedure 25(d), the Court substitutes Whitley as the proper Defendant and the case caption reflects the same.

[2] The facts set forth in this section are taken from the uncontradicted administrative record submitted to the Court. *See Krichbaum v. Kelley*, 844 F. Supp. 1107, 1110 (W.D. Va. 1994) ("When the court, as here, reviews the decision reached by an administrative agency, the summary

1

advanced individual training, Plaintiff was assigned to an air defense artillery unit at Fort Sill, Oklahoma. AR 22, 46, 65, 77. While he was enlisted, Plaintiff received written counseling for various violations of the Uniform Code of Military Justice ("UCMJ"). AR 23-24, 28-32, 42. A few months after his enlistment, when he was presented with a positive drug test result, Plaintiff admitted to having used marijuana. AR 35.

On July 9, 2009, Plaintiff was admitted to an inpatient facility in Texas where he was treated for cannabis, alcohol, and prescription drug abuse. *Id.* Plaintiff completed the 28-day inpatient program and was discharged on August 6, 2009. *Id.* When Plaintiff returned to Fort Sill, he "actively and successfully participat[ed] in the [Army Substance Abuse] program" with a program counselor. AR 19, 118. But on the morning of August 31, 2009, Plaintiff failed to report for a scheduled formation and was found with a large knife that exceeded what the Army allowed in the barracks. AR 30, 32. Responders at Fort Sill ultimately transported him to a nearby hospital for treatment and later discovered that he had ingested an undetermined amount of triazolam, a prescription sedative. AR 68.

The next day, the Army Substance Abuse Program clinical director notified Plaintiff's company commander that Plaintiff's intentional abuse of prescription medication constituted a rehabilitation failure. AR 35. In a memo supporting this determination, the clinical director wrote that "[i]t is obvious the treatment plan was not followed." According to the report, Plaintiff was "afforded many opportunities to receive/obtain help;" his "lack of motivation and continued aberrant behavior are indicative of commitment failure to treatment issues;" and Plaintiff's "behavior toward change and failure to accept responsibility has resulted in unsatisfactory

---

judgment motion stands in a somewhat unusual light, in that the administrative record provides the complete factual predicate for the court's review."), *aff'd*, 61 F.3d 900 (4th Cir. 1995).

participation in Rehabilitation Treatment." *Id.* The clinical director recommended that Plaintiff met the criteria for administrative separation from the Army. *Id.*

Plaintiff's company commander then initiated action to separate Plaintiff from the Army under provisions of Army Regulation 635-200, Chapter 9, for drug rehabilitation failure. AR 36-37. Plaintiff's company commander indicated that Plaintiff "was enrolled in [the Army Substance Abuse Program], and through subsequent behavior, has demonstrated a lack of acceptance of rehabilitative measures" and that Plaintiff was a rehabilitation failure. AR 42. Plaintiff acknowledged receipt of the action, waived his right to counsel, and elected not to submit a statement on his own behalf. AR 38-41. Ultimately, military authorities approved Plaintiff's separation from the Army prior to the expiration of his term of service and directed Plaintiff's discharge characterization be "Under Honorable Conditions." AR 45. On November 16, 2009, after one year and two months of service, the Army involuntarily separated Plaintiff. AR 46. When he was discharged, Plaintiff received a Department of Defense document, known as a "DD Form 214," that identified "Alcohol Rehabilitation Failure" as the narrative reason for separation. *Id.* The form also contained a separation code the Army uses for alcohol rehabilitation failure and described the character of service as "Under Honorable Conditions (General)." *Id.*

Plaintiff then sought administrative review of his discharge characterization with the Army Discharge Review Board. AR 118. He asked this review board to upgrade his discharge characterization to honorable and find that he should not have been separated from the Army as a rehabilitation failure. *Id.* The Army Discharge Review Board ultimately refused to upgrade his discharge characterization and found that Plaintiff's discharge was "both proper and equitable." AR 110. Despite this result, the Army made two corrections to Plaintiff's DD Form 214. The Army Discharge Review Board corrected the narrative description, and the corresponding code,

3

so that Plaintiff's discharge form read "Drug Rehabilitation Failure" rather than "Alcohol Rehabilitation Failure[.]" AR 10.  Accordingly, on August 1, 2011, the Army issued Plaintiff a new DD Form 214.  AR 106.

Plaintiff then applied for correction of his military records through the Army Review Boards Agency, which tasked one of its boards—the Army Board for Correction of Military Records (the "Board")—with review of Plaintiff's request.  AR 72-76.  The Board denied Plaintiff's application on July 10, 2012, determining there was "insufficient evidence to support" Plaintiff's request and finding that Plaintiff "failed to submit evidence that the narrative reason and character of service are in error or unjust."  AR 56.  In the Board's view, the evidence demonstrated that Plaintiff "was properly and equitably discharged in accordance with regulations" and that "without evidence of an error or injustice," federal regulation requires that an involuntary discharge from active duty for drug rehabilitation failure requires a RE code of 4.  AR 57.  On July 8, 2013, Plaintiff submitted an application to the Army Board for Correction of Military Records requesting that his characterization of service be upgraded to honorable and claimed he should not have been separated or, alternatively, should have been separated under Army Reg. 635-200, Chapter 5.  AR 15-21.  The Board reconsidered Plaintiff's case and denied Plaintiff's request for relief on January 8, 2015.  AR 2-11.

Following the Board's denial of his request, on April 25, 2020, Plaintiff filed this suit against the Secretary of the Army, seeking judicial review of the Board's decision to deny Plaintiff's application to correct his military service record.  Dkt. 1, ¶ 1.  On August 18, 2020, Plaintiff moved for summary judgment asking this Court "to compel the ABCMR to fulfill its duty under 10 U.S.C. § 1552(a)(1) to correct an injustice that Plaintiff suffered as a result of errors committed by the Army."  Dkt. 19, 6.  Plaintiff identifies his improper separation from the Army,

and his separation with a General under Honorable Conditions discharge, as the injustices he has suffered. *Id.* On September 8, 2020, Defendant then filed its own motion for summary judgment arguing that the Board's denial of Plaintiff's application cannot be vacated because its decision does not satisfy the "weighty standard" of review based on the administrative record. Dkt. 22, 13. Then, on September 22, 2020, Plaintiff filed his opposition to Defendant's motion for summary judgment, Dkt. 26, and on October 2, 2020, Defendant replied. Dkt. 28.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). In APA actions, however, the typical summary judgment standard is modified because a judicial review of an agency's decision is limited to the underlying administrative record, which contains all of the facts relevant to the court's review. *See* 5 U.S.C. § 706. Unless a party contradicts some portion of that administrative record, "[t]he key difference in an APA case is that 'the presence or absence of a genuine dispute of material fact is not an issue.'" *LivinRite, Inc. v. Azar*, 386 F. Supp. 644, 650 (E.D. Va. 2019) (quoting *Hyatt v. U.S. Patent & Trademark Office*, 146 F. Supp. 3d 771, 780 (E.D. Va. 2015)). In APA cases involving review of agency action, "the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Shipbuilders Council of Am. v. U.S. Dep't of Homeland Sec.*, 770 F. Supp. 2d 793, 802 (E.D. Va. 2011) (internal citations omitted).

The APA provides that agency decisions may be set aside "if they are arbitrary, capricious" or "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (E); *see also Randall v. United States*, 95 F.3d 339, 348 (4th Cir. 1996). A court reviewing final agency action asks whether the

agency's "written opinion made a 'rational connection' between that evidence and its conclusion." *Downey v. U.S. Dep't of the Army*, 110 F. Supp. 3d 676, 687 (E.D. Va. 2015) (quoting *Ohio Valley Envtl. Coalition v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir. 2009)); *see also Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). And though a "court must consider whether the agency considered the relevant factors and whether a clear error of judgment was made," *Aracoma Coal Co.*, 556 F. 3d at 192, under the law "[t]he court is not empowered to substitute its judgment for that of the agency." *Friends of Buckingham v. State Air Pollution Control Bd.*, 947 F.3d 68, 80 (4th Cir. 2020) (quoting *Appalachian Voices v. State Water Control Bd.*, 912 F.3d 746, 753 (4th Cir. 2019)).

Federal law authorizes the Secretary of the Army, through the Army Board for Correction of Military Records, to "correct any military record . . . when the Secretary considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1). When courts review military review board decisions, they generally apply an "unusually deferential application of the arbitrary or capricious standard of the APA." *Downey*, 110 F. Supp. 3d at 686 (quoting *Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000)). This added layer of deference guards against the danger that a court may act as a "super correction board," *Charette v. Walker*, 996 F. Supp. 43, 50 (D.D.C. 1998), or "a forum for appeals by every soldier dissatisfied with [a review board's decisions]," which would "take the judiciary far afield of its area of competence." *Cone*, 223 F.3d at 793. Though this "broad grant of discretion" does not entirely preclude judicial review of the Secretary's decision, the statute "does substantially restrict the authority of the reviewing court to upset the Secretary's determination." *Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989). Applying this heightened deferential standard to a military review board decision, a court may only set aside the "most egregious" decisions, *id.* at 1515, but a plaintiff may still establish

that a military corrections board violated the APA if he shows that "the Board did not consider or respond to an argument that does not appear 'frivolous' on its face and 'could affect the Board's ultimate disposition.'" *Thompson v. United States*, 119 F. Supp. 3d 462, 468 (E.D. Va. 2015).

### III. ANALYSIS

A final decision of a military records correction board, like the decision of the Army Board for Correction of Military Records here, is indisputably "final agency action" and therefore judicially reviewable under the APA. 5 U.S.C. § 706; *Chappell v. Wallace*, 462 U.S. 296, 303 (1983). Plaintiff argues that the Army erred in separating him from military service under Army Regulation 635-200 without complying with its requirements and that the Board's refusal to correct that error was arbitrary, capricious, and contrary to the Army's own regulations. Dkt. Nos. 19, 6-9; 26, 4-5. Defendant maintains that the Board's decision to uphold his separation and reject Plaintiff's application for an upgrade in his discharge condition was proper under the APA. Dkt. 22, 12-18. Defendant further argues that under the even more demanding standard by which courts review decisions of military judgment, the Board's denial of Plaintiff's request was not a "most egregious" case of a "clear error" in judgment. Dkt. 22, 13.

In considering the Motions for Summary Judgment, the Court examines the relevant regulatory backdrop, analyze whether the Army followed its own regulations, and determine whether substantial evidence exists in the administrative record to support the Board's decision.

#### A. Regulatory Standard

The regulatory authority vested in the Secretary of the Army, through the Army Board for Correction of Military Records, stands on solid ground. "Army Regulations, when sanctioned by the President, have the force of law[.]" *United States v. Freeman*, 44 U.S. 556, 567 (1845); *see also United States v. Hamidullin*, 888 F.3d 62, 71 (4th Cir. 2018) ("To be sure, military regulations

7

have the force of law.") (citing *Standard Oil Co. of Cal. v. Johnson*, 316 U.S. 481, 484 (1942)). Federal law confers broad authority on the Secretary of the Army to order separation of an Army solider before his or her term of service expires. *See* 10 U.S.C. § 1169. In addition, Congress has mandated that the Secretary of Defense develop programs for identifying, treating, and rehabilitating alcohol- and drug-dependent persons in the Armed Forces. *See* Military Selective Service Act of 1967, Pub. L. No. 92–129, § 501, 85 Stat. 348, 361 (1971). There is, therefore, no question that the regulations at issue were "properly promulgated." *Dominion Res., Inc. v. United States*, 219 F.3d 359, 366 (4th Cir. 2000). Instead, the question before the Court is whether the Army properly applied its own regulations in Plaintiff's case.

Active duty enlisted servicemembers of the United States Army may be separated from service under Army Regulation 635-200. Chapter 9 of that regulation relates to separation for "Alcohol or Other Drug Abuse Rehabilitation Failure" and its scope section outlines two necessary conditions for administrative separation "based upon alcohol or other drug abuse":

> (1) The Soldier is enrolled in Alcohol and Drug Abuse Prevention and Control Program (ADAPCP).
>
> (2) The commander determines that further rehabilitation efforts are not practical, rendering the soldier a rehabilitation failure. This determination will be made in consultation with the rehabilitation team.

Army Reg. 635-200, ¶ 9-1. The regulation goes on to provide that soldiers enrolled in the Army's substance abuse program "may be separated because of inability or refusal to participate in, cooperate in, or successfully complete such a program in one of the following circumstances." *Id.* ¶ 9-2. The first circumstance supporting separation is when a servicemember demonstrates "a lack of potential for continued Army service and rehabilitation efforts are no longer practical." *Id.* Separation is also proper when "[l]ong-term rehabilitation is necessary and the soldier is transferred to a civilian medical facility for rehabilitation." *Id.*

8

A second regulation, Army Regulation 600-85, outlines the Army's substance abuse program protocol and dovetails with the administrative separation regulation, Army Regulation 635-200. For example, the consultation with a soldier's rehabilitation team referenced in the administrative separation regulation is required under Army Reg. 600-85. *See* Army Reg. 635-200, ¶ 9-1; Army Reg. 600-85, ¶ 1-7. The Army Substance Abuse Program regulation contemplates both outpatient and inpatient treatment depending on the severity of substance abuse. Army Reg. 600-85, ¶¶ 8-6; 8-7. After soldiers referred to residential treatment complete that regimen, they are involved in a mandatory, nonresidential follow-up period for a total rehabilitation period of one year. *See id.* ¶1-7. Army Regulation 600-85 provides that when a soldier enrolled in the Army Substance Abuse Program is deemed a rehabilitation failure, he or she will be processed for administrative separation pursuant to Army Regulation 635-200. *Id.* ¶¶ 7-12d; 10-6c. Finally, a soldier may also be subject to separation if his or her commander determines, in consultation with the soldier's Army Substance Abuse Program clinical provider, that "the Soldier does not have potential for future service" or "rehabilitative measures are not practical[.]" *Id.*

## B. Failure to Follow Army Regulations

This Court does not reweigh the relevant facts and render judgment on the Army's chosen course as a matter of first impression. *See Roetenberg v. Secretary of the Air Force*, 73 F. Supp. 2d 631, 636 (E.D. Va. 1999) (noting that review of military board of corrections "decision is not *de novo*, but rather is limited to the administrative record."). Rather, the Court takes the decision of the Army Board for Correction of Military Records as it finds it and asks whether the Board's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "unsupported by substantial evidence[.]" 5 U.S.C. § 706(2)(A), (E); *see also White v.*

9

*Secretary of Army*, 878 F.2d 501, 503 (D.C. Cir. 1989). Though this deferential standard is accorded to any number of agency decisions, certain matters of military judgment receive an even more generous level of judicial deference. This is because "the Constitution contemplates that Congress has 'plenary control over rights, duties, and responsibilities in the framework of the Military Establishment, including regulations, procedures, and remedies related to military discipline.'" *Weiss v. United States*, 510 U.S. 163, 177 (1994) (quoting *Chappell*, 462 U.S. at 301). This Court examines the administrative record of this case, mindful that "[j]udicial deference thus 'is at its apogee' when reviewing congressional decisionmaking in this area.'" *Weiss*, 510 U.S. at 177 (quoting *Rostker v. Goldberg*, 453 U.S. 57, 70 (1981)).[3]

Plaintiff argues that his separation violated the Army's regulation because, by the time of his separation, he was beyond the reach of the Army's substance abuse prevention program. Dkt. Nos. 19, 7-8; 26, 3-4. The strength of this argument depends on how long Plaintiff remained "enrolled" in the program. If, as Plaintiff asserts, he was no longer enrolled on September 1, 2009 because he had already completed a 28-day inpatient program on August 6, 2009, then the substance abuse program-enrollment basis in Army Regulation 600-25 does not support his discharge. But if Plaintiff remained enrolled in the program on September 1, 2009, as Defendant maintains, the Army was within its rights to separate Plaintiff on account of the fact that his serious bout with substance abuse occurred during his continued enrollment in the Army's substance abuse prevention program.

---

[3] This is not to say that the same degree of judicial deference applies when the question at issue implicates interests that extend beyond the core of military judgment. *See Thomasson v. Perry*, 80 F.3d 915, 950 (4th Cir. 1996) (en banc) (Hall, J., dissenting) ("[W]hile I will defer, as I ought and must, to the professional judgment of military commanders on things military, I may never defer to their judgment on things constitutional.").

In the alternative, Plaintiff contends that rehabilitation efforts in his case were, in fact, still practical, and that his separation from military service as a rehabilitation failure therefore violated Army Regulation 635-200. Dkt. Nos. 19, 8.; 26, 4-5  In support of this argument, Plaintiff points to facts in the administrative record that suggest his program counselor stated on August 31, 2009—the day before he was deemed a rehabilitation failure—that there were still "numerous tools" at the Army's disposal to assist him. Dkt. 19, 8. Defendant, on the other hand, argues that Plaintiff was appropriately deemed a rehabilitation failure for two reasons. *Id.* at 15-18. First, Defendant maintains that Plaintiff had already received treatment through a 28-day inpatient program for his substance abuse challenges. *Id.* at 15-16. Second, Defendant argues that Plaintiff experienced a severe health episode resulting from substance abuse less than a month after he completed inpatient treatment. *Id.* at 16-18.

On this record, the Board's finding that Plaintiff's separation from the Army was proper survives judicial scrutiny. Without passing on the wisdom of the Army's decision to separate Plaintiff at that particular time in his active military service, the Board's decision to uphold his separation and conditions of discharge was not arbitrary or capricious. The Board twice considered Plaintiff's application: first, in 2012, and again, on reconsideration in 2015. AR 1-11, 48-58. The Board noted that after Plaintiff finished a 28-day inpatient program through the Army Substance Abuse Program, he was admitted to a local hospital after overdosing on prescription medication. AR 53. Plaintiff marshals evidence in the administrative record showing the Board concluded that "[o]n 6 August 2009, he successfully completed the ASAP[,]" AR 6, to support his argument that his enrollment in the program had ended by the time of his discharge. Dkt. 26, 3. He argues that the Army therefore lacked a necessary requirement for administratively separating him pursuant to Army regulations. *Id.* at 4.

Yet, there is also evidence in the record that reveals Plaintiff's enrollment in the Army Substance Abuse Program did *not* end with the completion of his inpatient treatment on August 6, 2009. *See*, *e.g.*, AR 86 (noting that on September 16, 2009, Plaintiff's substance abuse program counselor "had to call the First Sgt. several times to get permission for Brendon to continue with his ASAP meetings. He is still a member of the Army and he is still enrolled in the program); AR 129 (same); AR 93 (letter to Congresswoman Marsha Blackburn's office stating that after Plaintiff "went to alcohol rehab, he "was following this rehab and participating in ASAP"); AR 128 (noting that on September 14, 2009, Plaintiff "also reported being late for his ASAP appointment as no one he called would come and escort him"). These contemporaneous statements were offered in support of Plaintiff by his then-attorney and parents, not Army personnel. The Board was, therefore, not without evidence of Plaintiff's ongoing enrollment in the Army Substance Abuse Program when the Army separated him pursuant to Army Regulation 635-200, Chapter 9 for rehabilitation failure. On the contrary, the record tends to show that Plaintiff continued with nonresidential follow-up rehabilitation treatment after inpatient hospital care, just as Army Regulation 600-85 mandates for one year following residential treatment under the Army Substance Abuse Program. *See* Army Reg. 600-85, ¶1-7.

There is similarly no basis for the Court to conclude that when the Army Board for Correction of Military Records refused to overturn Plaintiff's designation as a rehabilitation failure, it failed to "correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1). The Board in its written decision noted that Plaintiff's "unit commander, in consultation with the ASAP Clinical Director determined the applicant was a drug rehabilitation failure." AR 56. Though it appears Plaintiff's unit commander reached this determination with the clinical director rather than Plaintiff's assigned ASAP counselor, the regulatory requirement is that "[t]his determination will

12

be made in consultation with the rehabilitation team." Army Reg. 635-200. This is not a case where a military board of corrections "fail[ed] to correct an injustice clearly presented in the record before it" in violation of 10 U.S.C. § 1552, which amounts to arbitrary and capricious agency action. *Cf. Code v. McCarthy*, 959 F.3d 406, 415 (D.C. Cir. 2020). In light of this record evidence, the Court cannot conclude that the Board's decision to uphold Plaintiff's separation from the Army was arbitrary, capricious, or contrary to law.

### C. Failure to Support Decision with Substantial Evidence

"'Substantial evidence' is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Reape v. Stackley*, 723 F. App'x 181, 183-84 (4th Cir. 2018) (quoting *Ceres Marine Terminals, Inc. v. Green*, 656 F.3d 235, 239 (4th Cir. 2011) (internal citations omitted)). To find substantial evidence in an administrative record, there must be "more than a mere scintilla but less than a preponderance" to support the finding. *Id.*

The Board outlined the Army's process for separating soldiers for drug rehabilitation failure under Army Regulation 600-85 and its authority to initiate separation of soldiers deemed rehabilitation failures under Army Regulation 635-200. AR 54-55. The 2012 written opinion detailed Plaintiff's prescription drug abuse subsequent to successful inpatient treatment. In that opinion, the Board explained that a military police report indicated that on August 31, 2009, a military investigator reported Plaintiff took an "unknown amount of Triazolam and that he waved a sheathed knife and pointed it at several people[.]" This event involving Triazolam resulted in Plaintiff being "admitted to [a local hospital] for an overdose of prescription medication." AR 53. In the opinion, the Board also incorporated findings made by his unit commander and the ASAP clinical director, concluding that Plaintiff "failed to submit evidence that the narrative reason and character of service are in error or unjust." AR 56. And the Board, in its 2015 opinion on a request

13

for reconsideration, made similar findings. *See* AR 2-11. Having considered and cited these and other facts, the Board's decision demonstrated a rational connection between the evidence in the record and the Board's ultimate conclusion.

The same conclusion follows from the Board's decision to consider Plaintiff's character of service. After reciting the honorable discharge standard and "carefully consider[ing]" Plaintiff's request to upgrade this characterization from "Under Honorable Conditions (General)" to "Honorable," the Board concluded "there [was] insufficient evidence to support his request." AR 55-56. Though Plaintiff criticizes these and other statements as conclusory, the Board "is not required to explain the reasons for its decision in great detail." *Reape*, 723 F. App'x at 184 (citation omitted) (finding substantial evidence supported former Marine servicemember's discharge conditions due to drug use); *see also Nat'l Elec. Mfrs. Ass'n v. U.S. Dep't of Energy*, 654 F.3d 496, 514-15 (4th Cir. 2011) ("Even when an agency explains its decision with less than ideal clarity, a reviewing court will not upset the decision on that account if the agency's path may reasonably be discerned."). Accordingly, the Court also finds substantial evidence in the record to support the Board's determination that Plaintiff was not entitled to an upgrade in his conditions of discharge.

## IV. CONCLUSION

For the reasons set forth above, it is hereby ORDERED that Plaintiff's Motion for Summary Judgment, Dkt. 18, is DENIED and Defendant's Motion for Summary Judgment, Dkt. 21, is GRANTED.

It is SO ORDERED.

Alexandria, Virginia
March 15, 2021

/s/
Rossie D. Alston, Jr.
United States District Judge

14